# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. <u>1:20-cv-03584</u>

CAROL ANN RANSAW, an individual,

PLAINTIFF,

v.

STATE OF COLORADO,
COLORADO DEPARTMENT OF PUBLIC SAFETY,
STANLEY HILKEY, in his individual and official capacity,
COLORADO STATE PATROL,
MATTHEW C. PACKARD, in his individual and official capacity,
MARC BORNHOFT, in his individual and official capacity,
CHRISTOPHER PADILLA, in his individual and official capacity,
UNKNOWN COLORADO STATE PATROL TROOPERS, in their individual and official capacities,
CITY OF STERLING,
STERLING POLICE DEPARTMENT,
TYSON R. KERR, in his individual and official capacity,
MATTHEW WILLIAMS, in his individual and official capacity,
LOGAN COUNTY,
LOGAN COUNTY SHERIFF'S OFFICE,
BRETT L. POWELL, in his individual and official capacity, and
UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES, in their individual and official capacities,

DEFENDANTS.

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

Plaintiff CAROL ANN RANSAW by and through her attorney, David H. Savidge of

SAVIDGE LAW FIRM, P.C. respectfully allege for her Complaint and Jury Demand as follows:

**INTRODUCTION**

1.       This is an action for damages against Defendants for violating Plaintiffs Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States. Plaintiffs allege that Defendants violated RANSAW's Fourth, Eighth, and Fourteenth Amendment rights when, intentionally, knowingly, recklessly, and with deliberate indifference to her constitutional rights, subjected her to an intrusive, unjustified, and illegal seizure without basis for believing she was engaged in criminal activity.  PADILLA arrested RANSAW for allegedly driving under the influence after passing a breathalyzer test and not exhibiting standard indicia of intoxication. WILLIAMS confirmed PADILLA's unconstitutional seizure by reporting in a separate assessment that RANSAW was intoxicated when she was not.  Rather, RANSAW exhibited indicia of being fearful for her safety after PADILLA ordered her out of her vehicle on a cold and windy December evening on the side of a busy interstate highway without proper winter gear and while also exhibiting great fear of arrest and confinement for a crime she did not commit and which PADILLA and WILLIAMS knew or should have known she did not commit.

2.       PADILLA arrested RANSAW in violation of her Fourth and Fourteenth Amendment rights, after stating that he would return RANSAW to her vehicle after blood test results came in but knowing, actually or constructively, that Colorado regulations did not require RANSAW's blood sample to be submitted to the Colorado Bureau of Investigation Forensic Services Denver Laboratory (hereinafter, "CBI Lab") until seven days later.

3.       In violation of her right to counsel, PADILLA told RANSAW that she could not call her lawyer until after the blood test after she asked to call her lawyer.

4.      PADILLA arrested RANSAW and WILLIAMS confirmed this arrest, in violation of RANSAW's Constitutional rights, knowing that the Logan County Detention Center (hereinafter "LCDC") would not permit her to pay her bond personally and would interfere with her ability to contact anyone who could pay the cash bond.

5.      Defendants knew or should have known that the bond of $750 was too low for bail bond companies to underwrite.

6.      Once at the LCDC, UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES denied RANSAW the use of a private bathroom out of public view and subjected her to a strip search violating her right to privacy in violation of her Fourth, Eighth, and Fourteenth Amendment rights.

7.      It is alleged that the STATE OF COLORADO, COLORADO DEPARTMENT OF PUBLIC SAFETY, STANLEY HILKEY, COLORADO STATE PATROL, MATTHEW C. PACKARD, STERLING POLICE DEPARTMENT, TYSON R. KERR, LOGAN COUNTY, LOGAN COUNTY SHERIFF'S OFFICE, and BRETT L. POWELL, have failed to adequately train or supervise officers causing the violations alleged herein.

8.      It is further alleged that the STATE OF COLORADO, COLORADO DEPARTMENT OF PUBLIC SAFETY, STANLEY HILKEY, COLORADO STATE PATROL, MATTHEW C. PACKARD, STERLING POLICE DEPARTMENT, TYSON R. KERR, LOGAN COUNTY, LOGAN COUNTY SHERIFF'S OFFICE, and BRETT L. POWELL, as a custom, practice and policy failed to adequately train or supervise their respective officers in how to safeguard the rights of the general public, arrestees, and prisoners in their custody.

6tgv

## JURISDICTION & VENUE

9.      This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343 and 2201. Jurisdiction supporting Plaintiffs' claims for attorney fees is conferred by 42 U.S.C. § 1988.

10.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the state of Colorado, and all of the Defendants are residents of the state. At all pertinent times mentioned herein, each individual Defendants were employed by the State of Colorado, Logan County, or the City of Sterling and was acting under color of state law.

## PARTIES

11.     At all pertinent times mentioned herein, Plaintiff RANSAW was a citizen of the United States of America, and residents of the State of New York.

12.     Plaintiff RANSAW is an African American woman and resident of Brooklyn, New York.

13.     The STATE OF COLORADO is a political subdivision and state in the United States of America.

14.     The COLORADO DEPARTMENT OF PUBLIC SAFETY is a governmental agency of the STATE OF COLORADO and oversees and commands the COLORADO STATE PATROL.

15.     HIKLEY, at all pertinent times mentioned herein, was and is the Executive Director of the COLORADO DEPARTMENT OF PUBLIC SAFETY and is the final policy maker for this agency and its subordinate agencies and officers.

16.     COLORADO STATE PATROL is a state-wide police agency of the STATE OF

COLORADO operating under the authority of the COLORADO DEPARTMENT OF PUBLIC SAFETY.

17.    PACKARD, at all pertinent times mentioned herein, was and is a Colonel in and Chief of the COLORADO STATE PATROL and is the final policy maker for this agency and its officers.

18.    BORNHOFT, at all pertinent times mentioned herein, was and is a sergeant in the COLORADO STATE PATROL.

19.    PADILLA, at all pertinent times mentioned herein, was and is a peace officer employed by the COLORADO STATE PATROL.

20.    UNKNOWN COLORADO STATE PATROL TROOPERS, at all pertinent times mentioned herein, were and are employed by COLORADO STATE PATROL and were trained and supervised by PACKARD.

21.    The CITY OF STERLING, at all pertinent times mentioned herein, was and is a political subdivision of the State of Colorado and LOGAN COUNTY and the authority under which Defendant STERLING POLICE DEPARTMENT operates.

22.    The STERLING POLICE DEPARTMENT, at all pertinent times mentioned herein, was and is a local police agency of the STATE OF COLORADO.

23.    KERR, at all pertinent times mentioned herein, was and is the Chief of the STERLING POLICE DEPARTMENT and is the final policy maker for this agency and its officers.

24.    WILLIAMS, at all pertinent times mentioned herein, was and is a sergeant employed by the STERLING POLICE DEPARTMENT.

25.    LOGAN COUNTY, at all pertinent times mentioned herein, was and is a political subdivision of the State of Colorado and the authority under which Defendant LOGAN

COUNTY SHERIFF'S OFFICE operates.

26.     LOGAN COUNTY SHERIFF'S OFFICE, at all pertinent times mentioned herein, was

and is a police agency operating under the authority of LOGAN COUNTY.

27.     POWELL, at all pertinent times mentioned herein, was and is the Sheriff of LOGAN

COUNTY and is the final policy maker for the Logan County jail system, including the jail in

which RANSAW was incarcerated.

28.     UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES, at all pertinent times

mentioned herein, were and are employed by Defendant LOGAN COUNTY SHERIFF'S

OFFICE and LOGAN COUNTY, and were trained and supervised by POWELL and operated the

jail in which Plaintiff RANSAW was incarcerated.

29.     LOGAN COUNTY, LOGAN COUNTY SHERIFF'S OFFICE, POWELL and

UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES are referred to collectively as the

LOGAN COUNTY Defendants.

30.     At all times, all Defendants were acting within the scope of their duties and employment,

under color and authority of state law, and in their official capacities as law enforcement officers,

agencies and governmental authorities.

## FACTUAL BACKGROUND

31.     On December 7, 2019 at approximately 5:11 PM, PADILLA stopped RANSAW on

Highway 76 (MM137) in Sterling, Colorado for speeding.  She was travelling at approximately

106 MPH in a 75 MPH zone.

32.     RANSAW had come to Aspen, Colorado from Brooklyn, New York to drive her friend,

Jennifer Greitzer to RANSAW's home.  Ms. Greitzer asked RANSAW to make the trip and drive

her to Brooklyn due to a personal emergency.

33.     The officer on the scene was Defendant PADILLA Christopher Padilla.  PADILLA made
out a citation for speeding (at a reduced speed), walked to the driver's side door of her
automobile, and handed RANSAW the citation.

34.     PADILLA alleges that, as he handed the citation to RANSAW and briefly spoke with her,
he stated that he smelled alcohol in the car.  PADILLA asked if anyone had been drinking and
RANSAW's passenger, Jennifer Greitzer, stated that she drank alcohol that day, but not
RANSAW.

35.     PADILLA then ordered RANSAW out of the vehicle.  PADILLA walked RANSAW to
the rear of the vehicle allegedly to determine if the smell was emanating from RANSAW or the
automobile's interior.  PADILLA observed that that the smell was much reduced in that location.
PADILLA asked RANSAW if she had been drinking alcohol.  RANSAW replied "No."

36.     In fact, RANSAW had not ingested any alcohol on December 7, 2019.

37.     PADILLA then asked RANSAW to perform some field sobriety tests.

38.     According to PADILLA's dash camera footage taken during the events herein described,
the stop took place entirely after dark; RANSAW is wearing a light jacket, light hat and later,
light gloves.  RANSAW was visibly cold and informed PADILLA of this fact at several points
during the traffic stop.  The dashcam video clearly shows that the stop took place in an open area
with significant winds with swift moving traffic including many large semi-tractor trailers
speeding by, on information and belief, at or near the 75 MPH speed limit.  The dashcam footage
also shows that PADILLA had RANSAW complete the field sobriety tests while facing the patrol
car's flashing police lights and the lights of oncoming traffic.

39.     The dashcam footage shows that the traffic stop took place in a dangerous, cold, windy location at night with blinding lights shining in RANSAW's face.

40.     Despite these extreme and difficult conditions, PADILLA's dash camera footage appears to show RANSAW completing the field sobriety tests satisfactorily.  PADILLA's written report claims that she did not and makes no mention of the difficult conditions under which she submitted to the field sobriety tests.  These conditions appear not to have been taken into account by PADILLA at any time during his decision to eventually place RANSAW under arrest.

41.     During the tests, RANSAW informed PADILLA that she was in the process of driving her friend from Aspen, Colorado to RANSAW's home in New York.  RANSAW informed PADILLA that they had been on the road all day and that RANSAW was tired from driving.

42.     RANSAW also shared at several points during the stop that she was scared and upset by the transpiring events.

43.     PADILLA then asked RANSAW to submit to a breathalyzer test to determine if she had been drinking alcohol.  RANSAW consented and took the breathalyzer test, which revealed 0.0 alcohol in RANSAW's system.

44.     PADILLA then asked RANSAW to sit on the hood of PADILLA's patrol car and continued to converse with her.  RANSAW continued to explain to PADILLA that because she was responsible for transporting her friend and was driving, she would never have been drinking.  PADILLA told RANSAW that he thought she did not complete the sobriety tests well and he believed she might be under the influence of some other substance.  RANSAW again stated how upset she was and began openly to cry while speaking with PADILLA.  Obviously, RANSAW's eyes were reddened by the wind, the cold, her fatigue and from crying - all of which affected her

speech and demeanor, though the dash cam footage with audio indicates that her speech was normal.

45.     Throughout the traffic stop, PADILLA asked RANSAW if she had been drinking, smoking marijuana, or using "edibles" apparently in reference to marijuana edibles.  RANSAW without fail responded "No" every time PADILLA asked these questions.

46.     PADILLA then escorted RANSAW back to her car and asked her to wait there.

47.     PADILLA then returned to his patrol car.

48.     At this point:

- •     PADILLA had already issued RANSAW a traffic citation for speeding,

- •     RANSAW had complied with each and every one of his requests and commands swiftly and politely,

- •     RANSAW had cleared a breathalyzer with a 0.0,

- •     the dash cam footage appears to show that RANSAW passed the field sobriety tests especially in light of the very difficult and dangerous conditions under which they were administered.

49.     At 17:42 and following on the dash cam recording, while in his patrol car, PADILLA called in to speak with BORNHOFT.  PADILLA refers to this as "phone a friend" in reference to a popular game show.  During the conversation, PADILLA often laughs about RANSAW stating that "she blew zeros" on the breathalyzer and stating at 17:42:44 that "I don't know, it doesn't feel right."  PADILLA also states that RANSAW had some eye motion anomalies that he refers to as "tremors" during the Romberg eye test (which he appears to dismiss) and had misjudged an estimate of 30 seconds.  PADILLA characterized these deviations from a perfect test under the

extreme conditions set forth hereinabove as a complete failure.   However, he openly admitted that roadside tests "suck" and that the real reason he believes RANSAW is intoxicated is that he "just has a feeling."  The recording then reveals more laughter.  Specifically, PADILLA states at approximately 17:43 that he has never had a roadside test, which he admits "suck," where the subject "sucks at it" but then "said absolutely nothing" incriminating and "not given me anything else to work with."  At 17:43:49 PADILLA states: "no, she's being fine.  She's just making up a bunch of excuses that are, I don't know, for some reason I'm not feeling confident."  PADILLA continues saying: "Well she's saying she's cold and blah blah blah."  At 17:44:20 PADILLA states "Alright I just needed to talk that through.  It just doesn't feel right."  He then guffaws in laughter saying to BORNHOFT: "Thanks buddy, I appreciate it."

50.     Based on the foregoing conversation with his "buddy," in which PADILLA admits that the roadside sobriety test sucks, that RANSAW has not incriminated herself, that "it just doesn't feel right," PADILLA seized RANSAW arresting her for driving under the influence.

51.     After the above-described conversation with BORNHOFT and in apparent compliance with BORNHOFT's orders or advice, PADILLA exited the patrol car, proceeded to RANSAW's vehicle and asked her to get out and come to the back of the car.  PADILLA asked RANSAW to put her hands behind her back, placed handcuffs on her, and formally placed her under arrest Mirandizing RANSAW simultaneously.  PADILLA then assisted RANSAW into the back seat of his patrol car.

52.     PADILLA returned to RANSAW's vehicle and ultimately performed a search of the vehicle that revealed no alcohol and no other drugs or drug paraphernalia.

53.     RANSAW asked to take the field sobriety tests again and despite the fact that there was

plenty of time to do so, PADILLA refused.

54.     PADILLA contacted MILLER of the STERLING POLICE DEPARTMENT to conduct additional sobriety tests but only after PADILLA transported RANSAW to the LOGAN COUNTY JAIL.

55.     After PADILLA arranged for Ms. Greitzer to be transported from the vehicle, he transported RANSAW to the Sterling Regional Medical Center to take a blood sample to test for intoxicating substances in her system.

56.     While waiting for the phlebotomist, PADILLA insisted that RANSAW was intoxicated despite her protestations to the contrary, stating "Look at you.  You know you're stoned."

57.     The dash cam video also recorded at 18:54:34 PADILLA telling RANSAW that she could not call her lawyer until after the blood test when she asked to call her lawyer.

58.     At this time:

- •     RANSAW had been driving for over five hours from Aspen, Colorado,

- •     subjected to a roadside sobriety test which tests PADILLA admitted "sucks" on the dash camera recording,

- •     feared for her safety as a black woman being stopped by law enforcement at night in a remote area and with the knowledge that all she did wrong was to speed,

- •     she had been crying as a result of her abject fear,

- •     was then placed under arrest for being intoxicated when she was not,

- •     and now being accused again, and with reason or need, of being intoxicated based on a "feeling" and because of the way she looked.

PADILLA did not make clear what about RANSAW's appearance made him think she was intoxicated.  However, because she was not, in fact, intoxicated, it could not have been anything that indicated actual intoxication.  Perhaps PADILLA referred to RANSAW's clothing style with ripped jeans, her quirky hat, or was it her eyes now puffy from tears and her fear.

59.     After the phlebotomist took RANSAW's blood sample, PADILLA transported RANSAW to the LCDC, located in LOGAN COUNTY and which is operated by the government of LOGAN COUNTY, the LOGAN COUNTY SHERIFF's OFFICE, the LOGAN COUNTY SHERIFF and UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES.

60.     AT 8:30 PM on December 7, 2019, while RANSAW was at the LCDC, MILLER administered a formal Colorado drug influence evaluation (hereinafter "DIE").  The DIE sheet completed by MILLER shows that MILLER assessed RANSAW as having bloodshot and reddened conjunctiva, her eyelids were normal, pupils equal, that she was able to follow stimulus, and had equal ocular tracking.  MILLER notes that there was a minor lack of convergence of the right eye.

61.     According to the highly regarded research and treatment hospital, the Mayo Clinic, eyelid tremors or twitching may be caused by:

- Alcohol intake

- Bright light

- Caffeine excess

- Fatigue

- Irritation of the eye surface or inner eyelids

- Smoking

- Stress

- Wind or air pollution

(https://www.mayoclinic.org/symptoms/eye-twitching/basics/causes/sym-20050838)

62.     Among the foregoing causes, RANSAW passed an alcohol breathalyzer test with 0.0. RANSAW also informed MILLER and PADILLA that she suffered from significant fatigue and stress.  As should have been obvious to MILLER and PADILLA, RANSAW's eyes would have been irritated by her continued crying.  Moreover, MILLER and PADILLA used very bright police flashlights shone directly at RANSAW's face in conducting the various eye-related tests. Accordingly, there was a high likelihood that the eye tremors were caused by something other than intoxication.

63.     RANSAW also informed MILLER that she had been using bottled oxygen to battle altitude sickness. RANSAW also shared with MILLER that she had a cold and was taking over the counter cold medication – all of which were yet additional reasons she presented with red and puffy eyes and exhibited fatigue.

64.      Importantly, MILLER notes in his initial observations of RANSAW that she was "very polite and cooperative" and that she "had normal coordination, speech, and facial color." (Emphasis added).

65.     Nevertheless, and despite compelling evidence to the contrary, MILLER concluded that RANSAW was "under the influence of cannabis."

66.     RANSAW was not informed that the blood test results would not be forthcoming that evening as PADILLA stated or that the blood sample needed to be shipped to the CBI Lab for analysis and that the results would not be available for at least a week if not longer.  The results

were not, in fact, available until months later on February 23, 2020.

67.     A bond was set for RANSAW's release at $750.  RANSAW was not permitted to immediately pay the bond and was denied access to her purse or telephone.  Defendants knew or should have known that the bond was too low for bail bond companies to underwrite.

68.     Therefore, RANSAW was denied the opportunity to pay her bond herself and to effectively contact anyone that could pay her bond on her behalf.

69.     RANSAW was only permitted to use the jail phone system and that her calls would be made collect, a system now used almost exclusively by prison and jail systems and on information and belief no longer in wide popular use.  This antiquated system resulted in confusion by recipients of the phone calls from RANSAW and delayed her ability to make bond and secure her release.

70.     Part of RANSAW's formal booking into the jail was a strip search that was conducted by a female officers but which could be observed by any officer in the vicinity.  The strip search caused RANSAW to be publicly humiliated and caused mental and emotional anguish.

71.     Once placed in her jail cell, RANSAW saw that her toilet was exposed to the open area of the jail and that male officers could see her when she disrobed to use the toilet.  When she complained about this invasion of her physical and sexual privacy, an UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY stated: "That's what you get when you break the law."   The UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY in question knew full well that RANSAW had not been convicted of any crime.  The use of an open toilet caused RANSAW to be publicly humiliated and caused mental and emotional anguish.

72.     Each cell in the LCDC is equipped with a computer station from which inmates may

arrange for their bond payment.  The computer station in RANSAW's cell did not function. RANSAW informed at least one UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY of this fact, but none of the UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES did anything to repair the computer station, relocate RANSAW to a cell with a working computer station, or provide any other workaround so that she could pay her bond and leave.

73.     Despite her difficulty in using the LCDC phones, RANSAW, via Ms. Greitzer, was able to alert her husband, Dr. Jimmy Van, to the fact that she was arrested and in the LCDC.  Dr. Van telephoned the LCDC but was told it was too late to speak with RANSAW, though it was only approximately 11:00 PM, and that RANSAW could not call him until 6:00 AM the following day.

74.     Because of this, RANSAW was unable to arrange for anyone to pay her bond on December 7, 2019 despite the fact that RANSAW herself had ample means to pay the bond in her purse, though UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES refused to permit her to access her purse to make the bond payment.

75.     LOGAN COUNTY, LOGAN COUNTY SHERIFF, LOGAN COUNTY SHERIFF'S OFFICE, and UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES continued refusal to permit RANSAW access to either her purse or a working computer station thus required that Dr. Van purchase an airline ticket, fly to Colorado, drive to Sterling, Colorado and pay the bond personally and delaying payment of the bond and release of RANSAW until December 9, 2019 at approximately 7:00 PM.

76.     When Dr. Van arrived at the LCDC on Sunday, December 9, 2019 at approximately 7:00 PM, an UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY told him to wait.  Despite the

fact that the UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY was doing nothing else at the time, she did not return to answer VAN until 30 minutes later, when she confirmed that RANSAW was at the LCDC.

77.     Dr. Van then gave the UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY $750 in cash for the bond taken from RANSAW and Dr. Van's joint marital bank account.  UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY did not provide Dr. Van with a receipt for large cash payment.  When Dr. Van asked for a receipt, UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY was visibly upset at the request.

78.     It then took the UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY an hour to release RANSAW despite no other visible work being done by UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY or anyone else at the LCDC reception area.

79.     When RANSAW received her belongings back upon release, her wallet was missing approximately $75.00 in cash that had been in RANSAW's purse at booking.  When RANSAW asked about the missing money, an UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTY simply shrugged.  After her traumatic weekend at the hands of the Defendants, RANSAW just wished to leave as quickly as possible and so did not file any further complaint about the missing money.

80.     All drug-related criminal charges against RANSAW were eventually dismissed based upon the blood toxicology results, which confirmed that she was not intoxicated.

81.     The actions of the defendants caused RANSAW to suffer great mental and emotional distress.  She suffered personal humiliation at being forced to expose her naked body to UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES and for being jailed for a crime she

did not commit and for which no probable cause or reasonable suspicion that she was intoxicated.

82.     The actions of the defendants were done knowingly, intelligently willfully and wantonly knowing that these actions were outrageous and would cause severe emotional distress to Plaintiffs.

83.     As a direct and proximate result of the Defendants' conduct described herein, RANSAW continues to experience, among other symptoms, terrible nightmares of confinement and not being able to escape.  Every time RANSAW sees a police vehicle, she feels panicked, even though she knows she is doing nothing wrong.  RANSAW feels ashamed of being arrested and jailed and of the treatment she received at the hands of the Defendants.  Because of that shame, RANSAW has not been able to share her experience and mental and emotional distress and anguish with her friends or family for fear of judgment.  This shame caused by Defendants has slowed RANSAW's recovery from her extreme anxiety and fear.  She remains scared that she will be arrested and locked up even though she has done nothing wrong.

## FIRST CLAIM FOR RELIEF

*(§ 1983 Fourth Amendment Violation – Unlawful Seizure - Defendants Padilla and Williams)*

84.     Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

85.     The actions of Defendant PADILLA and WILLIAMS as described herein, while acting under color of state law, intentionally deprived RANSAW of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including her right to freedom from unlawful seizures as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, in that the Defendant had no probable cause or reasonable suspicion to believe that RANSAW had committed any violation of

the law other than speeding prior to seizing her person pursuant to the unlawful arrest.

86.     Defendant PADILLA improperly arrested RANSAW and intentionally, knowingly, and recklessly subjected her to an illegal, demeaning, and invasive seizure without any reasonable justification.

87.     Defendant WILLIAMS improperly continued the arrest of RANSAW and intentionally, knowingly, and recklessly subjected her to an illegal, demeaning, and invasive seizure without any reasonable justification.

88.     Defendants' conduct proximately caused damages, and economic losses to RANSAW.

## SECOND CLAIM FOR RELIEF

*(§ 1983 Violation – Violation of the Right of Bodily Integrity and Privacy –
Logan County Defendants)*

89.     Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

90.     LOGAN COUNTY Defendants knew that RANSAW wished not to expose her naked body to Defendants or anyone else at the LCDC.

91.     Despite this fact, LOGAN COUNTY Defendants refused to allow RANSAW to pay her bond and to give her access to those who could do so on her behalf prior to formal booking.

92.     These actions by LOGAN COUNTY Defendants resulted in RANSAW being booked into the LCDC, strip searched and forced to use a toilet that exposed her naked body.

93.     The actions of Defendant as described herein, while acting under color of state law, intentionally deprived RANSAW of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including her right to freedom from unlawful and unreasonable searches as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, in that the Defendant conducted an

intrusive and illegal strip search in direct violation of state law, CRS 16-3-405.

94.     The actions described caused humiliation, embarrassment, and emotional distress to

RANSAW and violated her right to privacy, bodily integrity, and privacy.  The actions of the

Defendants were the direct and proximate cause of the violations of Plaintiff's constitutional

rights and of the damages suffered by Plaintiff, including pain, suffering, emotional distress,

anguish, and humiliation.

**THIRD CLAIM FOR RELIEF**

*(§ 1983 Violation – Refusal to Permit Payment of Bond –*
*Logan County Defendants)*

95.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

96.     LOGAN COUNTY Defendants knew that RANSAW wished not to be detained and

incarcerated and to be released from LCDC.

97.     Despite this fact, LOGAN COUNTY Defendants refused to allow RANSAW to pay her

bond and to give her access to those who could do so on her behalf prior to formal booking.

98.     These actions by LOGAN COUNTY Defendants resulted in RANSAW being booked into

the LCDC and remaining incarcerated there from the evening of Friday, December 7, 2019

through the evening of Monday, December 9, 2019.

99.     The actions of Defendant as described herein, while acting under color of state law,

intentionally deprived RANSAW of the securities, rights, privileges, liberties, and immunities

secured by the Constitution of the United States of America, including her right to freedom from

unlawful and unreasonable searches as guaranteed by the Eighth Amendment to the Constitution

of the United States of America and 42 U.S.C. §1983, in that the Defendant conducted an

intrusive and illegal strip search in direct violation of state law, CRS 16-3-405.

100.    The actions described caused humiliation, embarrassment, and emotional distress to RANSAW and violated her right to privacy, bodily integrity, and privacy.  The actions of the Defendants were the direct and proximate cause of the violations of Plaintiff's constitutional rights and of the damages suffered by Plaintiff, including pain, suffering, emotional distress, anguish, and humiliation.

**FOURTH CLAIM FOR RELIEF**

*(§ 1983 Violation – Constitutional Failure to Train and/or Supervise*

*Against Defendants Powell, Packard, Hilkey, Kerr, Sterling Police Department, City of Sterling,*

*Logan County Sheriff's Office, Colorado State Patrol, Colorado Department of Public Safety,*

*Logan County, State of Colorado*)

101.    Plaintiffs incorporate by this reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

102.    HILKEY, as Executive Director of the COLORADO DEPARTMENT OF PUBLIC SAFETY, on behalf of and at the command of the STATE OF COLORADO, is a policy maker for that agency and all its subordinate agencies including but not limited to the COLORADO STATE PATROL, and in that capacity establishes policies, procedures, customs and/or practices for its officers including but not limited to POWELL and PADILLA.

103.    PACKARD, as the Commander of the COLORADO STATE PATROL is a policy maker for that agency, and in that capacity establishes policies, procedures, customs and/or practices for its officers including but not limited to PADILLA.

104.    POWELL, as LOGAN COUNTY SHERIFF, is a policy maker for the LOGAN SHERIFF'S OFFICE under the authority of LOGAN COUNTY, and in that capacity establishes

policies, procedures, customs and/or practices for its officers.

105.    The UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES, under the oversight of Defendant POWELL, are responsible for the custody and supervision of incarcerated persons in the LCDC.

106.    KERR, as Chief of the STERLING POLICE DEPARTMENT, is a policy maker for the STERLING POLICE DEPARTMENT under the authority of the CITY OF STERLING, and in that capacity establishes policies, procedures, customs and/or practices for its officers including but not limited to WILLIAMS.

107.    The policies, procedures, customs and/or practices established by Defendant POWELL, and through him, by LOGAN COUNTY, LOGAN COUNTY SHERIFF's OFFICE, and implemented by the UNKNOWN LOGAN COUNTY SHERIFF'S DEPUTIES included the failure to permit RANSAW access to her purse to pay her bond, access to a working telephone system and payment system, access to a private toilet, and subjected her to a strip search.

108.    Defendants developed and maintained policies, procedures, customs and practices exhibiting a deliberate indifference to the Constitutional rights of persons in the State of Colorado, which caused the violation of Plaintiff's rights as set forth above.

109.    Defendants failed to adequately train and supervise their officers with respect to the necessity of actual probable cause and reasonable suspicion to support an arrest for driving under the influence, as well as the rights to outside contact, access to payment for one's bond, right to bodily privacy and integrity, among other rights, which failure caused the violation of Plaintiffs' Constitutional rights as set forth above.

110.    Defendants were aware of the lack of training given to their respective officers in dealing

with members of the public to be free from Constitutional violations committed as described in this Complaint.

111.    If any training was given to officers regarding the civil rights of members of the public to be free from the Constitutional violations described in this Complaint, the Defendants knew that such training was reckless or grossly negligent and that misconduct in that area was almost inevitable.

112.    Defendants failed to adequately supervise their officers to ensure that said officers did not violate the Constitutional rights of the public including Plaintiff.

113.    Defendants had a statutorily and constitutionally imposed duty to protect the constitutional rights of the members of the public from violations of those rights by their respective officers. By failing to properly train such officers, including Defendants, the above named Defendants violated Plaintiffs' constitutional rights.

114.    The direct and proximate result of Defendants' failure to train was the violation of Plaintiffs' rights as previously described herein, including pain and suffering, compensatory and punitive damages to be decided by the jury.

115.    The interrelated policies, practices, and customs alleged above were the direct and proximate cause of the unconstitutional acts committed by the Defendants and the injuries suffered by Plaintiff.

        WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants, and grant:

        (a)      Appropriate declaratory and other injunctive and/or equitable relief;

        (b)      Compensatory and consequential damages, including damages for emotional

distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering including mental and emotional, on all claims allowed by law in an amount to be determined at trial;

(c)      All economic losses on all claims allowed by law;

(d)      Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)      Attorney's fees and the costs associated with this action, including those associated with having to defend against the false criminal charge as well as expert witness fees, on all claims allowed by law;

(f)      Pre- and post-judgment interest at the lawful rate.

(g)      Any further relief that this court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this 7th day of December 2020.

                              SAVIDGE LAW FIRM, P.C.

                              */s/ David H. Savidge, Esq.*
                              David H. Savidge, Esq., CO. Atty. No. 38658
                              4845 Pearl East Circle, Ste. 101
                              Boulder, CO 80301
                              Phone: (720) 441-3667
                              Email:  dsavidge@savidgelawfirm.com
                              Attorney for Plaintiff CAROL ANN RANSAW

## VERIFICATION

I declare under penalty of perjury that I have read this above Verified Complaint and the statements contained in it are true and correct to the best of my knowledge and belief.

Date: December 07, 2020

_____
Carol Ann Ransaw

Subscribed and sworn to before me in the county of _Kings_, State of _New York_ _____, this _07th_ day of 2020.

My commission expires on: _Aug. 17. 2024_

_____
Notary

ADELUSI O NELSON
Notary Public - State of New York
No. 01AD6408275
Qualified In Queens County
My Comm. Expires Aug. 17, 2024