IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03584-NYW-KLM

CAROL ANN RANSAW, an individual,

    Plaintiff,

v.

CHRISTOPHER PADILLA, in his individual capacity,

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

## I. Background

This matter is before the Court on a discovery dispute between Plaintiff and a non-party, Colorado State Patrol ("CSP"). Plaintiff sued Defendant, a Colorado State Trooper, for the alleged violation of her Fourth Amendment rights resulting from his warrantless arrest of her after subjecting her to a roadside sobriety test in December of 2019. Plaintiff, who is African-American, asserts that she was arrested by Defendant without probable cause. In short, Plaintiff served a subpoena on CSP seeking information about Defendant's alleged history of racial profiling in his work as a State Trooper. CSP is obligated to maintain the information sought in the subpoena by Colo. Rev. Stat. § 24-31-309(3.5), colloquially known as the "racial profiling statute."

CSP objected to a part of Plaintiff's subpoena which requested "all data collected by CSP, regarding all CSP troops or units in which [Defendant] Christopher Padilla has been a member for the time period of his employment, in accordance with [the racial

1

profiling statute]." CSP argued that the information is not relevant, the subpoena is overbroad, and producing the information would be unduly burdensome to CSP, a non-party to the case.

The Court held an initial hearing on Plaintiff's oral Motion to Compel a Response to the subpoena and CSP's objections on January 4, 2023, at which a further evidentiary hearing was scheduled for January 30, 2023. See [#120]. The evidentiary hearing was reset to March 7, 2023, due to a medical emergency of counsel. See [#124]. On that date, CSP presented evidence about the purported burden of producing the information sought in the subpoena. See [#127, #133]. At the conclusion of the hearing, the Court allowed Plaintiff and CSP to brief the issues of relevance and burden of production related to the information sought. Plaintiff and CSP filed separate briefs on March 28, 2023. See [#135, #136]. The Court has read the briefs and considered the arguments made therein.

At the conclusion of the evidentiary hearing, the Court asked counsel to address a proposal for limiting the information sought by the subpoena to the following: data on Trooper Padilla and three comparator Troopers regarding traffic stops conducted during a one-year time period from July of 2019 to July of 2020, including the perceived demographic information of each person stopped, the duration of each contact, the reason for the contact, the result of the contact, whether the trooper unholstered or brandished a weapon during the contact, and whether the trooper discharged a weapon during the contact. All of the information discussed in the Court's proposal is mandated for collection under the racial profiling statute. Although CSP has not explicitly said so, the Court's proposed narrowing of the subpoena appears to have resolved CSP's overbreadth objection, as it was not repeated in CSP's brief. See *Colorado State Patrol's Brief in*

*Support of Objection to Subpoena* ("CSP's Brief") [#135] at 1-8.  Nevertheless, CSP continues to object to providing the narrowed information on the grounds of relevance and burden.  Those objections are addressed below.

## II. Analysis

**A.     Relevance**

CSP argues that "evidence of whether Defendant Padilla has a history of racial profiling is irrelevant to challenge his credibility because racial discrimination is not a topic at issue in this case based on the claims and defenses."  *CSP's Brief* [#135] at 7.  In the Third Amended Complaint, which is the operative complaint, Plaintiff alleged that she is African-American, *Third Am. Compl.* [#59] ¶ 12, that she "feared for her safety as a black woman being stopped by law enforcement at night in a remote area and with the knowledge that all she did wrong was to speed," *id.* ¶ 65, and that Defendant Padilla "had no probable cause or reasonable suspicion to believe that [she] had committed any violation of the law other than speeding prior to imposing [field sobriety tests] and ultimately seizing her person pursuant to the unlawful arrest," *id.* ¶ 102.  The Third Amended Complaint [#59] does not include the phrase "racial profiling" or any factual allegations to suggest that Plaintiff asserts the Defendant Padilla engaged in racial profiling when he stopped her, subjected her to sobriety tests, and ultimately arrested her.

In her brief, Plaintiff argues that evidence regarding whether Trooper Padilla engaged in racial profiling "is relevant because it goes directly towards Defendant Padilla's credibility and bias at the heart of the case."  Essentially, Plaintiff contends that evidence which shows that Defendant is biased "would have a tendency to make the facts to which he testified less probable in the eyes of the jury . . . ."  *Pl.'s Brief Regarding Narrowed*

*Subpoena Duces Tecum to Colorado State Patrol* ("Plaintiff's Brief") [#136] at 7 (citations omitted).  Plaintiff references the dispute about whether she failed the roadside sobriety tests as an example of an issue where Defendant's credibility matters.

For its part, CSP argues that "the operative complaint is void [sic] of any claims or allegations related to racial profiling," pointing out that Plaintiff's "Fourth Amendment claim for unlawful seizure based on her arrest does not allege racial discrimination, actions motivated by a discriminatory purpose, or any discriminatory effect."  *CSP's Brief* [#135] at 5.  CSP asserts that the lack of an explicitly pled link between alleged racial discrimination and Plaintiff's claim renders "any sort of credibility challenge on the issue of racial discrimination" irrelevant.  *Id.* at 6.

The Court agrees with Plaintiff.[1]  In order for Plaintiff to prove her claim for unlawful search and seizure against Defendant Padilla, she must show that his actions were objectively unreasonable based on the totality of the circumstances.  *United States v. Oliver,* 363 F.3d 1061, 1066 (10th Cir. 2004).  Trooper Padilla's explanation of his conclusion that Plaintiff failed the roadside sobriety tests, for example, is among the most significant evidence regarding the objective reasonableness of his arrest of Plaintiff.  Because his explanation of the test results is significant, his credibility in accurately portraying those results is likewise significant.  Evidence of racial profiling (i.e., bias) by

---

[1] Nevertheless, the Court is troubled by the lack of a Fourteenth Amendment Equal Protection claim, as such a claim has been recognized as the appropriate vehicle for asserting that an officer subjected a citizen to unequal treatment based on her race during the course of an otherwise lawful traffic stop.  *See, e.g., United States v. Hare*, 308 F. Supp. 2d 955, 989 (D. Neb. 2004); *Whren v. United States*, 517 U.S. 806, 813 (1996) (stating that the "Constitution prohibits selective enforcement of the law based on considerations such as race.  But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.  Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Trooper Padilla would tend to make the fact to which he is expected to testify (i.e., that Plaintiff failed the roadside sobriety tests and thus there was probable cause to arrest her) less probable in the eyes of the jury. That fact is also of consequence in determining the Fourth Amendment claim, and it is therefore relevant. Fed. R. Evid. 401; *Robles v. Salvati*, ___F. Supp. 3d ___, ___, No. 3:19-cv-566(CSH), 2022 WL 16833103, at *4-5 (D. Conn. Nov. 9, 2022) (holding evidence of racial profiling relevant to officers' credibility in case alleging violation of constitutional rights during traffic stop); *Dunham v. Lobello*, No. 11-cv-1223 (ALC), 2023 WL 3004623, at *10 (S.D.N.Y. Apr. 19, 2023) (citing *Robles* to hold that evidence on racial profiling is relevant to a Fourth Amendment claim only insofar as it goes to an officer's credibility); *United States v. Turrentine*, No. CR-12-0001-001-HE, 2012 WL 729348, at *3 (W.D. Okla. Mar. 5, 2012) ("Therefore, defendant's argument that he was stopped because he is of African–American descent is relevant here only as it tends to undermine Trooper Painter's credibility as to his testimony that he observed a traffic violation." (citing *Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that the subjective motivations of the officer "play no role in ordinary [ ] Fourth Amendment analysis")). Hence, CSP's objection on the basis of relevance is **overruled**.

**B.     Undue Burden**

As previously indicated, the Court asked the parties to address the feasibility of production of the following information relating to traffic stops by Trooper Padilla and three comparators during a one-year time frame: the perceived demographic information of each person stopped, the duration of each contact, the reason for the contact, the result of the contact, whether the trooper unholstered or brandished a weapon during the contact, and

whether the trooper discharged a weapon during the contact.  There is no dispute that the racial profiling statute mandates collection of the referenced data, and CSP makes no argument that it does not possess the information.  Instead, CSP asserts that producing it to Plaintiff would be unduly burdensome because CSP would have to individually review Computer Aided Dispatch ("CAD") reports from stops conducted by Trooper Padilla and the three comparators during the relevant time frame and calculate the duration of each contact.  *CSP's Brief* [#135] at 7.  Similarly, CSP argues that in order to produce information regarding a trooper's show of force, it would have to "individually review the narrative section of each case report for each trooper's contacts to determine whether a trooper documented a show of force during a contact." *Id.* at 8.  It is not clear to the Court whether this objection relates to production of data regarding both unholstering or brandishing a weapon and discharging a weapon.  CSP makes no argument regarding the burdensomeness of gathering the demographic information, the reason for the contact, and the result of the contact.

The Court is not persuaded by CSP's arguments that production of the requested data is unduly burdensome to CSP.  First, CSP makes no showing of the number of CAD reports or other case reports which would be subject to individual review.  Absent that information, assessing burden is speculative.  Second, as Plaintiff points out, Captain Carnival, Deputy Director of Communications for CSP, testified that the information contained in the CAD reports is searchable and that mining data from those reports for a specific trooper's traffic stops "wouldn't take too long.  Maybe within the scope of a day, a few hours, to maybe 8 to 10 hours." *Tr. of Hearing* [#133] at 117:6-8, 133: 4-16.  Third, Captain Sharp, Commander of the CSP Professional Standards Section, testified that it

takes "a couple of hours" to gather data from the program manager in response to a racial profiling complaint against a single CSP officer for a six-month period, although analysis of that data takes longer.  *Id.* at 90:5-1, 113:18-24.  Here, CSP would be merely gathering responsive data; any analysis would be left to Plaintiff's counsel.  In light of this testimony, the Court cannot conclude that requiring CSP to produce the narrowed information would be unduly burdensome.  Accordingly, CSP's undue burden objection is **overruled.**

However, Plaintiff's renewed request that the Court order CSP to produce all data retrieved from its NICHE system for Defendant Padilla's entire troop from 2017 to 2022 is likewise rejected.  *See Pl.'s Brief* [#136] at 13.  The Court concludes that this request is overbroad because the information sought is very likely not necessary to demonstrate whether Trooper Padilla engaged in racial profiling.  Producing the narrowed information regarding Trooper Padilla's traffic stops and those conducted by three comparator officers over the one-year period surrounding the incident at issue will provide ample opportunity for Plaintiff to see how Trooper Padilla's actions stack up against his peers, and whether they suggest bias against African-Americans.

### III.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** as follows:

(1)  On or before May 24, 2023, CSP shall identify three comparator troopers who have an equivalent level of experience to Trooper Padilla and approximately the same number of traffic stops as Trooper Padilla during the time period from July 1, 2019, to July 1, 2020 (the "Comparator Troopers").  CSP shall explain, in writing, the reasons why the

selected Comparator Troopers are comparable to Defendant.

(2) On or before May 24, 2023, CSP shall produce to Plaintiff the following information related to each traffic stop conducted by each of the Comparator Troopers and Trooper Padilla for the period from July 1, 2019, to July 1, 2020: (1) the perceived demographic information of the driver; (2) the duration of the contact; (3) the reason for the contact; (4) the result of the contact; (5) whether the trooper unholstered or brandished his weapon during the contact; and (6) whether the trooper discharged his weapon during the contact.

Dated:  May 11, 2023

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge